IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF § | | |
| JOHN A. TRIVANOVICH § | | PLAINTIFF |
| § | | |
| v. § | CIVIL ACTION NO. 1:06CV539-LG-JMR | |
| § | | |
| GULFPORT-BILOXI REGIONAL § | | |
| AIRPORT AUTHORITY § | | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [25] filed by the defendant, Gulfport-Biloxi Regional Airport Authority. The plaintiff, the Estate of John A. Trivanovich, filed a response to the Motion, and the defendant has replied. Upon reviewing the submissions of the parties and the relevant law, the Court finds that the Airport's Motion for Summary Judgment should be granted.

FACTS

John A. Trivanovich began working for the Airport on January 17, 2000. (Ex. B to Def.'s Mot. at 17). He worked as a maintenance foreman, which involved doing paperwork and processing bills, throughout his employment with the airport. (*Id.* at 17-18). Trivanovich contended that one of the employees, David Peterson, began sexually harassing him in 2003 by "playing with" Trivanovich's breasts and genitals. (*Id.* at 33-34, 53). The alleged harassment continued for two years. (*Id.* at 53). Trivanovich claimed that he reported the sexual harassment to the maintenance superintendent, Jimmie Hahn, during the early part of October 2003, but Hahn responded that it was just Peterson's way of playing around. (*Id.* at 33-34). He also testified that a group of Airport employees complained to Hahn about Peterson's conduct one

other time.[1]  (*Id.* at 34).   He alleged that he attempted to tell Hahn's supervisor, Don Shepley, about the harassment, but Shepley told him he did not have time to talk to him.  (*Id.* at 55-56).

On or about June 6, 2005, Trivanovich became angry at Peterson after they argued over who was in charge in the maintenance department.  (*Id.* at 58-59, 64-65).  After the argument, as Peterson left the room, Trivanovich made a shooting gesture with his hand and said "pow."  (*Id.* at 65-66).  On June 8, 2005, maintenance personnel informed Shepley that they were concerned about statements made by Trivanovich, including statements that he wanted to commit suicide and that he wanted to bring a gun to work to resolve his problems.  (Ex. C to Def.'s Mot.).[2]  The wife of an airport employee also called the police on that day and notified them that she was concerned for her husband's safety because Trivanovich had threatened to shoot him.  (Ex. D to Def.'s Mot.).  Trivanovich met with the police officer and Shepley at the Airport on that day and expressed that he had been seeing a physician for mental problems.[3]  He was taken to the hospital by ambulance. On June 20, 2005, the Airport sent a letter to Trivanovich by certified mail, informing him that he had been suspended with pay, because his statements had raised concern

---

[1] Unfortunately, the Court was only provided with excerpts of Trivanovich's deposition, and no further information regarding the occasion on which the group complained about Peterson's conduct is before the Court.

[2] Exhibit C is an unsworn memorandum drafted by Shepley.  The Airport also has produced unsworn statements from several Airport employees regarding the alleged statements by Trivanovich.  The Estate has not objected to the admissibility or authenticity of these exhibits and has not submitted any evidence or testimony that disputes the veracity of these statements.  It is certainly undisputed by the parties that Trivanovich made the shooting gesture and said "pow," since this is admitted in the Complaint and in Trivanovich's EEOC charge and deposition.

[3] Trivanovich was diagnosed with post-traumatic stress disorder and depression.  He also suffered from delusions.  He claimed that these problems were caused by Peterson's harassment. (Ex. A -C to Pl.'s Resp.)

for his safety as well as the safety of other employees.  (Ex. G to Def.'s Mot.).  On September 21, 2005, the Airport informed Trivanovich, via certified mail, that he had been discharged as a result of the threatening verbal statements that he made in violation of the Airport Personnel Manual.  (Ex. A to Def.'s Mot.)

On January 26, 2006, Trivanovich filed an EEOC charge alleging sex discrimination and retaliation.  He filed this lawsuit against the Airport on May 26, 2006, alleging that he was subjected to sex discrimination that amounted to a hostile work environment in violation of Title VII of the Civil Rights Act.  (Compl. at 3).  He also asserted that his suspension and termination were retaliation for his complaints regarding the sexual harassment.  (*Id.*)

Trivanovich died on February 8, 2008, and his Estate was substituted as a party on May 21, 2008.[4]  The Airport has filed a Motion for Summary Judgment, alleging that Trivanovich's EEOC charge was not filed within 180 days of the alleged discrimination and, *inter alia*, that the Airport had a valid, nondiscriminatory reason for suspending and terminating him.

## DISCUSSION

Pursuant to FED. R. CIV. P. 56, any party to a civil action may move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings

---

[4] It is unclear whether state law or federal law should be applied in order to determine whether Title VII claims survive the death of the plaintiff.  *See King v. Bowman Transp., Inc.*, 789 F.2d 859, 875-76 (11th Cir. 1986).  However, the Court finds that such a claim survives under either state or federal law because such a claim is personal in nature and is intended to address individual wrongs rather than general wrongs to the public.  *See Bowman*, 789 F.2d at 876 (citing *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729-30 (5th Cir. 1980)); *see also* Miss. Code Ann. §91-7-237.

and discovery on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Celotex Corp. v. Catrett*, 477 U.S. at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

**Sex Discrimination - Hostile Work Environment**

Title VII "prohibits sexual harassment that takes the form of a tangible employment action, such as a demotion or denial of promotion, or the creation of a hostile or abusive working environment."  *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162 (5th Cir. 2007).  In order to file a lawsuit under Title VII, a plaintiff must file an EEOC charge within 180 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1).  The time limitation set forth in Title VII commences with the date of "the alleged unlawful employment practice."  *See id.*  If an EEOC charge is not timely filed, a lawsuit based on the untimely charge should be dismissed.  *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 599-600 (5th Cir. 2006); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476-77 (5th Cir. 1991).

In the present lawsuit, the alleged sexual harassment began in 2003 and ended no later than June 8, 2005.[5]  Therefore, considering the 180 day time limitation, the deadline for filing a sexual harassment/hostile work environment charge would have been no later than December 5,

---

[5] Trivanovich did not return to work at any time after June 8, 2005; thus, no sexual harassment could have occurred after that date.

2005.  Trivanovich's suspension, which the Estate alleges was retaliation, occurred on June 20, 2005.  Therefore, the deadline for filing that charge would have been December 17, 2005.  Trivanovich's termination, which was also allegedly retaliatory, occurred on September 21, 2005.  Thus, the deadline for filing the retaliation claim regarding his termination was on March 20, 2006.  Trivanovich's EEOC charge was filed on February 23, 2006.  As a result, the retaliation claim concerning his termination was timely, but the retaliation claim concerning his suspension and the sexual harassment/hostile work environment claim are time barred.[6]  As a result, the sexual harassment/hostile work environment claim and the retaliation claim concerning Trivanovich's suspension must be dismissed.

**Retaliation**

To establish a prima facie case of retaliation, the Estate must demonstrate that (1) Trivanovich participated in an activity protected by Title VII; (2) the Airport took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57(5th Cir. 2007); *Aryain v. Wal-Mart Stores Tex. LP*, 2008 WL 2655792 (5th Cir. July 8, 2008).  "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action."  *McCoy*, 492 F.3d at 557, *quoted in Aryain*, 2008 WL 2655792.  If the employer meets this burden of production, the plaintiff must demonstrate that the employer's reason was a pretext for the actual retaliatory

---

[6] Equitable tolling of the time limitation is available in certain instances, but the Estate has not asserted that the time limitation should be tolled.  *See Lovett v. Barbour Int'l, Inc.*, 211 Fed. Appx. 281, *2 (5th Cir. Dec. 14, 2006) (the plaintiff has the burden of demonstrating equitable estoppel).

reason. *Id.*

Trivanovich claimed that he reported the sexual harassment to the maintenance superintendent, Jimmie Hahn, during the early part of October 2003. He also testified that a group of Airport employees complained to Hahn about Peterson's conduct one other time. Trivanovich made some statements to medical providers and in his deposition that, according to the Airport, indicate that he may not have told anyone at the Airport about the sexual harassment. However, for purposes of the Airport's Motion for Summary Judgment, the Court must not make credibility determinations and must construe all disputed facts in favor of the Estate. Therefore, construing the facts in favor of the Estate, Trivanovich participated in protected activity. Additionally, it is undisputed that Trivanovich's termination was an adverse employment action. It is questionable whether the Estate can establish a causal connection between the protected conduct and the termination, particularly where Trivanovich allegedly engaged in protected activity almost two years prior to the termination. However, the Airport asserts that it is not necessary for the Court to determine whether the Estate has established a prima facie case of discrimination, because it has set forth a legitimate, non-discriminatory reason for the discrimination, and the Estate has not demonstrated that it was pretext for retaliation.

The Court agrees that the Airport has set forth a legitimate, non-discriminatory reason for terminating Trivanovich. It is undisputed that Trivanovich made a shooting gesture with his hand and said, "pow," after a heated argument with a fellow employee. Threatening conduct of this nature, particularly at an airport, would certainly raise serious concerns for the safety of employees and the public. Additionally, Trivanovich's medical problems substantiated the Airport's worries that he potentially posed a danger to Airport employees and airline passengers.

The Estate has not provided any argument or evidence to the Court in an attempt to demonstrate that the Airport's reason for terminating Trivanovich is a pretext for discrimination.[7] As a result, the Airport is entitled to judgment as a matter of law regarding the remaining retaliation claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [25] filed by the defendant, Gulfport-Biloxi Regional Airport Authority, is **GRANTED**.  This lawsuit is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 14th day of July, 2008.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

[7] The substance of the Estate's Response to the Motion for Summary Judgment is less than two pages in length, and the Estate produced three exhibits, which were composed of incomplete medical records.  The medical records establish that Trivanovich suffered from a very serious illness and tend to establish a causal connection between his illness and the alleged harassment, but they also tend to refute the Estate's position that the termination was retaliation for protected activity because Trivanovich told his medical providers that he did not tell anyone about the harassment.